UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>The Roman Catholic Diocese of Ogdensburg, New York,<br><br>                 Debtor.<br><br>Century Indemnity Co.,<br>                 Appellant<br><br>                 v.<br><br>Official Committee of Unsecured Creditors, *et al*.,<br>                 Appellees. | Case No. 25-cv-01594-AJB<br><br>Bankruptcy Case No. 23-60507 (PGR)<br><br>Chapter 11 |

**APPELLEE'S OBJECTION TO EMERGENCY MOTION
FOR A STAY LIMITED STAY PENDING APPEAL**

Appellee, the Official Committee of Unsecured Creditors (the "**Committee**") of The Roman Catholic Diocese of Ogdensburg, New York (the "**Diocese**" or the "**Debtor**") in the above-captioned case (the "**Case**") under chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"), by and through its undersigned counsel, hereby submits this *Objection* (the "**Objection**") to *Appellee's Emergency Motion for a Limited Stay Pending Appeal* [Appellate Docket No. 3] (the "**Motion**") filed by Appellant Century Indemnity Co. ("**Century**").[1] In support of its Objection, the Committee respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Century's Motion should be denied because there is absolutely no basis to grant a stay pending appeal. The *Bankruptcy Court's Memorandum Decision and Order Permitting Non-Testimonial Survivor Statements* (the "**Statement Decision**," Motion, Ex. 1) and the *Order Denying*

---
[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

1

*Motion for Stay Pending Appeal* (the "**Stay Order**," Motion, Ex. 2) provide a clear basis to deny Century's Motion. The issue in this appeal is whether the Bankruptcy Court properly granted the Committee's Motion for a conference to allow survivors of childhood sexual abuse to present non-testimonial statements to the Bankruptcy Court as well as the Bishop of the Diocese of Ogdensburg. In opposing the Committee's request, Century argued that (a) there is no statutory or rule-based authority for a conference where claimants in a bankruptcy case – who in this Case are survivors of childhood sexual abuse – can provide non-testimonial statements to the Bankruptcy Court and (b) that the Bankruptcy Judge would be unduly influenced by such statements to the point where Century would be prejudiced in a potential proceeding in the future.

2. The elements for a stay pending appeal all support the clear conclusion that the Motion must be denied, as follows:

   a. Century has and cannot demonstrate a likelihood of success on the merits because, as set forth in the Statement Decision, (a) there is clear statutory and rule-based authority for a non-testimonial court conference and (b) the Court is not likely to be compromised as a trier of fact by hearing non-testimonial statements (Stay Decision, pp. 2-3);

   b. Century will not be irreparably harmed absent a stay because there is a remedy available to Century if, in fact, the Bankruptcy Court is compromised because Century may seek recusal in the future (Stay Decision, p. 3);

   c. issuance of a stay will substantially injure survivors who have waited decades to share their stories and have had their cases against the Diocese stayed for two years by operation of the automatic stay of 11 U.S.C. § 362 (Stay Decision, p. 3); and

   d. the public interest clearly weighs in favor of granting survivor impact statements (Stay Decision, p. 4)

3.  Century cannot meet its burden to obtain a stay pending appeal. Thus, the Court must deny the Motion.

## RELEVANT FACTS

4.  The Committee is comprised of seven individuals who have asserted claims against the Diocese based on sexual abuse they suffered as children. (Bankr. Dkt, No. 65.)

5.  The Diocese is a religious corporation that provides religious services across eight counties in northern New York. (Statement Decision, p. 2). The Diocese is named as a defendant in 124 lawsuits filed under New York's Child Victim act that state claims due to childhood sexual abuse perpetrated by individuals for whom the Diocese was responsible. (Statement Decision, p. 2).

6.  On July 27, 2023, the Diocese commenced its case under chapter 11 of Title 11 if the United States Code (the "**Bankruptcy Code**"). (Statement Decision, pp. 2-3) Approximately 130 individuals filed claims against the Diocese based on childhood sexual abuse (such individuals are referred to herein as "**Survivors**"). (Statement Decision, p. 3)

7.  On the first day of this case the Diocese informed the Court that "[t]he Diocese does not seek bankruptcy relief to hide the truth or deny any person a day in court. In fact, the Diocese is committed to pursuing the truth and has never prohibited any person from telling his or her story or speaking his or her truth in public." *Affidavit of Rev. Peter J. Karalus Regarding Structure and Pre-Filing History of the Debtor and in Support of the Chapter 11 Petition and First Day Pleadings* [Bankr. Dkt. No. 8, ¶63] ("**Karalus Affidavit**").

8.  On September 26, 2025, the Committee moved for an order authorizing non-testimonial survivor statements to the Bankruptcy Court. (Statement Decision, p. 3) The statements will be made at a status conference off the record. There will be not recording or transcription of the statements. They may not be used by any party.

9. The Committee stated the following reasons to authorize survivor statements and allow Survivors to have a "day in court" to present statements about their experiences (Bankr. Dkt No. 1050, ¶ 11):

- *Validation and Acknowledgment*: Court proceedings provide a formal acknowledgment of the trauma suffered by survivors. It validates their experiences and affirms that their suffering is acknowledged by society and the legal system.

- *Empowerment and Agency*: Participating in legal proceedings empowers survivors by giving them a voice. It allows them to actively engage in the pursuit of justice and reclaim a sense of agency that was stripped away by the abuse.

- *Closure and Healing*: For many Survivors, having their perspective heard in court can be a pivotal step towards emotional healing and closure. It provides a mechanism for Survivors, to, at least in part, confront the past, reclaim their narrative, and move forward with their lives. Moreover, Survivors often feel isolated because they went through the abuse alone and believe that they carry the burden alone. As Survivors hear from other individuals who suffered similar harm or were abused by the same perpetrators, they learn that they are not alone.

10. The Committee cited Bankruptcy Code sections 105(a) and 1109(b) as well as Rules 7016 and 5001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") in support of the request. (Bankr. Dkt. No. 1050, ¶ 12 and 1089, ¶¶ 5-11)

11. On October 27, 2025, after a contested hearing, the Court entered its well-reasoned Statement Decision. The Decision relied on the following statutory authority: (a) section 1109(b) of the Bankruptcy Code; (b) section 105(d) of the Bankruptcy Code; (c) Bankruptcy Rule 5001(b); and (d) Fed.R.Civ.P. 77(b) (collectively, the "**Statutory and Rule Authority**").

12. In the Sacramento Diocese bankruptcy Case, on March 7, 2025, the bankruptcy court overruled objections by numerous insurers and issued a written decision for publication, granting that creditors' committee's motion to authorize the presentation of non-testimonial survivor statements. Rejecting arguments that a court session to hear survivors was not authorized by the Bankruptcy Code, the court stated:

> The reality is that profound human, psychological, and spiritual aspects of church sex abuse cases transcend tort damages. The bankruptcy reorganization process may be proficient in the hard-headed business of marshaling diocesan resources and insurance coverage available to fund tort damage payments, but it does little to heal festering psychological wounds.
>
> **Anything that promotes reconciliation, catharsis, and solace for sex abuse victims in a chapter 11 case serves the interests of justice and is a worthy task for a bankruptcy judge.**
>
> **Procedurally, the victims statement session qualifies as a form of conference that is neither a trial nor a hearing.** If one needs a label and a justification, it is in the nature of a confidential settlement conference that is an exercise of inherent judicial authority.

(Emphasis added).[2] As Judge Klein noted, the bankruptcy court is not the trier of fact of sexual abuse personal injury claims. The survivor statements are not testimony under oath, nor are they evidence, nor or they subject to response. They are fundamentally a "listening session."[3]

## ARGUMENT

13. The relevant factors for a stay pending appeal are "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007)(internal citations omitted). Century cannot

---

[2] *Memorandum Order on Motion to Authorize Presentation of Survivor Statements,* Docket No. 1153 (Mar. 7, 2025) at p. 2, *In re The Roman Catholic Bishop of Sacramento,* U.S. Bankruptcy Court, E.D. Cal., Case No. 24-21326. A copy of the Decision is attached hereto as Exhibit A.

5

meet its burden under any of these factors.

**A.        There is virtually no likelihood an appeal will succeed on the merits.**

14.     Century argues that it must only show that success on the merits is "realistically 'possible.'"  Motion, ¶ 23.  Century argues that the Committee did not offer any appellate precedent to support its request for survivor statements.  *Id*., ¶ 13.   Century's argument makes no sense as the Bankruptcy Court is not required to wait for an appellate decision on a matter before ruling on it, and as Century is well aware, there is no appellate decision on this issue.  Nor should the Court stay relief of an order on the sole basis that there is no appellate authority on the issue.  Novel matters of law proceed notwithstanding the potential for appeal or reversal.[4]

15.     Moreover, the Court's well-reasoned Decision clearly and specifically articulated its bases for roundly rejecting each of Century's objections.  As such, there is no more than a mere possibility that an appeal would be successful.

16.     Further, the Court's Decision relied on recent precedent in this District from the Diocese of Syracuse and the Diocese of Albany chapter 11 cases, as well as other Districts including District of Maryland (Diocese of Baltimore), the Eastern District of California (Diocese of Stockton), the Western District of New York (Diocese of Rochester) and the District of Vermont (Diocese of Burlington).  *See* Statement Decision, pp. 7-9. Simply put, it was clear that the Decision was not a "close call" that would necessitate a stay on a novel issue of law or a wait for an appellate decision.

17.     Century tries to show that there is a split among bankruptcy courts as to whether to allow survivor impact statements, because bankruptcy courts in Purdue, the Archdiocese of New Orleans and the Archdiocese of Guam have allowed survivor statements at confirmation rather than as

---

[3] *Id.* at p. 7.

[4] As set forth in the Survivor Statement Motion, this is not a novel issue of law and numerous courts have granted similar motions under these same circumstances.

6

a separate conference untethered from confirmation. This argument is unavailing and does not demonstrate a "split" of opinion that requires a stay. First, there is no evidence to show that survivors requested a conference for survivor statements in the Archdiocese of Guam (Agana). The evidence cited by Century merely shows that the statements were made during the confirmation hearing. There is no evidence that anyone requested or the court in that case consciously decided that the confirmation hearing was the only appropriate time for survivor impact statements. Second, all three of these decisions were decided before the Supreme Court's decision in *Purdue*. The Statemnet Decision noted that post-*Purdue*, in a case involving non-debtor releases, it is critical to allow survivor-claimants an opportunity to be involved in the case prior to the confirmation hearing to dissipate the possibility that they opt-out of a plan and its releases out of frustration. Given the clear, ample Rule and Statutory Authority to allow non-testimonial statements, it is well within the Court's discretion to allow the statements even if other courts exercised their discretion differently.

18. Century argues that section 105 cannot be used to override the Fed. R. Bankr. P., the Fed. R. Evid. or to create substantive rights, specifically "immunity from use of statement or admission of fact and prohibition of cross examination or comment." Motion, ¶ 7. This argument is also unavailing because the Court did not create a substantive right through its Decision. Non-testimonial statements are merely statements. The survivors are not serving as fact witnesses in the proceeding. No Survivor statement may be used for any purpose because it will not be recorded. Every substantive right for every party with respect to any factual testimony at a later point is preserved. No survivor is required to make a statement. If a survivor later testifies as to the specific facts of their case, the survivor may be cross-examined.

19. Participation in a status conference is not a substantive right created under section 105. It is a procedural right granted under section 1109, Bankruptcy Rules 7019 and 5001 and Civil

Rule 77.

**B.    Century will not be harmed absent a stay.**

20.    Century argues that parties may be prejudiced if the Court's impartiality is called into question at a later date. There is no possibility of irreparable harm. First, as noted in the Decision, courts "regularly strive to transcend…sentiments and apply the law as [they] interpret it according to the facts…" Statement Decision, p. 8 and see Stay Decision, p. 3. Courts are perfectly capable of assessing facts and the law notwithstanding the sympathetic or unsympathetic nature of a particular litigant. Arguably, if sympathy were the sole basis guiding judicial decisions, insurers would find themselves with very limited legal recourse. Clearly that is not the case.

21.    Century complains that there was no evidentiary record to support the Decision. However, this is not an issue that requires an evidentiary record. The Court, pursuant to the Rule and Statutory Authority, scheduled a non-testimonial status conference. There will be no record of the proceeding. It is virtually impossible to imagine any prejudice to a party from a non-testimonial statement.

22.    Based on Century's logic, parties would be prejudiced every time counsel made an outlandish, specious argument. Further, Century's conjecture that a future finding of prejudice will prejudice parties because a new Court would have to preside over portions of the case is not persuasive. That outcome is highly unlikely and, currently, nothing more than highly creative speculation by Century. Moreover, Century's argument demonstrates that there is a remedy available to it in the unlikely event that there is a future finding of prejudice. Thus, there cannot be irreparable harm in light of a remedy already threatened by Century.

**C.    Survivors will be substantially injured if a stay is granted.**

23.    Century ignores this factor. Survivors are harmed every day after their injury. They

8

are further harmed by the judicial process and inability to present their story before the Court. Allowing some survivors to choose to tell their story will help their healing process. Further, additional survivors who may not be able to speak publicly at this time, will benefit from hearing the statements and having validation that they are not alone from the words and strength of another survivor. For survivors, strength begets strength and disclosure aids healing. Thus, by definition, enforced silence hampers healing and substantially injures survivors.

24. Additionally, in light of Purdue, if survivors are not sufficiently engaged, survivors may be harmed if there is a reorganization plan that the Committee and a majority of survivors agree to but others opt-out of a plan and its releases out of frustration. This is due to the requirement, under Purdue, that a court cannot confirm a chapter 11 plan that provides non-debtor releases over the objection of a creditor impacted by such non-debtor releases. In this case, the Diocese will seek non-debtor releases for the benefit of its parishes and other related entities through a plan of reorganization. After Purdue, those releases must be consensual and, therefore, survivor engagement in the chapter 11 case will benefit efforts to obtain consent to confirm a plan.

**D.        Public interest clearly lies with denying a stay and allowing survivor statements.**

25. Century makes a contorted argument that public interest supports its request for a stay. Century supports this argument with (a) a lack of appellate authority for the relief granted in the Decision and (b) the supposed critical nature of the riveting question of whether there is authority for survivor impact statements.

26. This argument is bizarre and unpersuasive. Century attempts to couch public interest solely as a question of statutory interpretation. The Committee asserts that there is precious little public interest in whether Century can prevail in convincing a district court that the Decision was wrong on all four bases of statutory interpretation. Moreover, there is clear public interest in allowing

9

victims of childhood sexual abuse to share their stories. First, there is a public interest in destigmatizing survivors so that others may come forward without fear of being silenced. Second, there is clear public interest to help even a single survivor heal through sharing his or her statement. Third, there is clear public interest in encouraging survivors to participate in the bankruptcy process so that they can support a plan when it is presented to them. This factor of aiding a positive outcome in a chapter 11 case is clearly within the public interest. The Court should reject Century's effort to turn the interpretation of the Statutory and Rule Authority into a matter of greater public interest than healing human beings.

## **CONCLUSION**

27. Century has failed to support its Motion. The Court should deny its request for a stay pending appeal.

Dated: New York, New York
  November 25, 2025

              PACHULSKI STANG ZIEHL & JONES LLP

              */s/ Ilan D. Scharf*
              James I. Stang, Esq. (admitted *pro hac vice*)
              Ilan D. Scharf, Esq.
              Karen B. Dine, Esq.
              1700 Broadway, 36th Floor
              New York, NY  10019
              Telephone:  (212) 561-7700
              Facsimile:   (212) 561-7777
              Email: jstang@pszjlaw.com
              Email: ischarf@pszjlaw.com
              Email: kdine@pszjlaw.com

              *Proposed Counsel for the Official Committee*
              *of Unsecured Creditors of The Roman Catholic Diocese of*
              *Ogdensburg, New York*